UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. S1-4:21CR00580AGF(DDN) |
| | ) |
| MICAH GORDON, | ) |
| | ) |
| Defendant. | ) |

## ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's pretrial motions. All pretrial motions were referred to United States Magistrate Judge David D. Noce under 28 U.S.C. § 636(b). Defendant and co-Defendant Kevin Cunningham are charged in a superseding indictment with conspiracy to use a facility of interstate commerce to commit murder, in violation of 18 U.S.C. §§ 2 and 1958(a) (Count I); and with possessing a firearm in furtherance of a drug trafficking crime, namely, conspiracy to possess with intent to distribute controlled substances, including fentanyl, in violation of 18 U.S.C. § 924(c)(1)(A). The case is scheduled for trial on February 6, 2023.

Currently before the Court are motions to suppress evidence and statements filed by Defendant.[1] Judge Noce scheduled an evidentiary hearing on the motions to suppress, which was held on September 7, 2022. At the hearing, the government presented the testimony of Detective Kevin Walsh, a detective employed by the St. Louis County

---

[1] In addition to the motions to suppress evidence that are the subject of this Order, Defendant filed five motions that did not require the presentation of evidence. Judge Noce issued an Order and Recommendation ("O&R") with respect to the non-evidentiary motions (Doc. No. 102), which was adopted by this Court (Doc. No. 149).

Police Department, assigned as a task force officer with the Drug Enforcement Administration, and videos of the custodial interviews of Defendant and co-Defendant Cunningham were admitted. After a transcript of the hearing was filed, the parties filed post-hearing memoranda.

In his motions and post-hearing memorandum (Doc. No. 120), Defendant asserts (i) there was no probable cause to arrest Defendant following the stop of Cunningham's vehicle, such that any statements made by him as well as later-recovered evidence should be suppressed as the fruit of his unlawful arrest; (ii) any statements should be suppressed both as the fruit of the unlawful arrest and because he never expressly acknowledged an understanding of his Miranda rights; and (iii) the evidence obtained as a result of an AT&T search warrant for digital information (related to Cunningham's phone) should be suppressed and not be permitted to be used against Defendant.

Judge Noce issued an Order and Recommendation ("Second O&R") recommending that Defendant's motions to suppress evidence and statements be denied. (Doc. No. 141). Defendant filed objections to the Second O&R, challenging each of the recommendations. Apart from a statement by Judge Noce that Defendant "actively" participated in a meeting that took place at the hotel room, Defendant does not challenge any of the extensive factual findings in the Second O&R, but rather reasserts that the evidence does not support findings that there was probable cause for the arrest or an understanding and voluntary waiver of his rights. The government filed a response to the Objections.

When a party objects to a report and recommendation concerning a motion to suppress in a criminal case, the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (quoting 28 U.S.C. § 636(b)(1)). The Court conducted a *de novo* review of the motions to suppress, including a review of the transcript of the hearing and the exhibits introduced at the hearing. Based on that review, the undersigned concludes that the Magistrate Judge made proper factual findings and correctly applied the law.

The facts are detailed in the Second O&R, which the Court adopts and incorporates, and will not be fully repeated here. Those facts are fully supported by the record. As set forth more fully in the Second O&R, in early October officers learned that a confidential source (CS-1) had been contacted by an individual in a drug trafficking organization about assisting a man, later determined to be co-Defendant Cunningham, with a person in St. Louis who owed Cunningham more than $120,000 in drug trafficking proceeds and who had caused problems for Cunningham. CS-1 was given Cunningham's telephone number, and learned through his conversations that Cunningham wanted the individual tortured to try and get the proceeds and then gotten rid of. CS-1 agreed to meet Cunningham in St. Louis on October 13, 2021, and agreed, as requested, to bring another person with him to accomplish the murder. Cunningham, speaking in code, said he would provide the firearms (which he called the "toys").

The officers obtained a warrant for precision location information on Cunningham's phone, and were able to monitor his whereabouts. CS-1, with the

3

officers' assistance, rented a hotel room at the Drury Inn for the meeting, which was equipped with audio and video recording equipment.

Cunningham drove his truck to the Drury Inn as arranged in his prior telephone calls with Cunningham.  Defendant Gordon and Wesley Taylor were with Cunningham in his truck.  Defendant went with Cunningham to the hotel room and met with CS-1 and CS-2.  Cunningham advised the CSs about the person who owed him money and was causing him problems and requested that they take care of him.  He stated that toys, including long guns, would be provided.  He told the CSs they would be sent information with the identity and photo of the individual and a location for the kidnapping to occur.  He also discussed torturing the debtor to get him to pay the money before he was killed.  Cunningham said he did not want the debtor to come back after being kidnapped.  Payment for the murder was discussed, although there was some confusion whether payment would be made by Cunningham or the Mexican drug source.  At the end of the meeting, Cunningham told the CSs they would hear from them and get a photo of the target and the location and that they would need ammunition magazines, and they agreed to meet later that evening at a designated spot.

During this entirety of this discussion in the hotel room, which was captured on video, Defendant Gordon was seated next to Cunningham.  While the extent to which Gordon spoke at the meeting was not clear from the hearing testimony, it is undisputed that Defendant was listening to what was said, and nodding his head throughout the discussion.  These are the facts on which the Court relies, as opposed to any

4

characterization of whether Defendant's conduct should be characterized as "active" participation.

    Defendant left with Cunningham, and the officers conducted surveillance while Cunningham made numerous stops.  During this time, an unknown phone number sent the CSs the location of 5324 Queens and a photo of the intended victim.  Cunningham then drove his truck to the spot at which they had arranged to meet the CSs.  Defendant and Taylor were in the truck.  The CSs drove to the meeting place and stopped next to Cunningham's truck, and got out of their vehicle.  The officers conducted surveillance of the meet.  One CS walked to the rear passenger door, where Defendant Gordon handed the CS a large object wrapped in blankets, later determined to be several firearms.  The other CS went to the driver side of the truck, where Cunningham handed the CS money.  Shortly thereafter, the CSs met with officers and confirmed they had been given weapons by Cunningham and Gordon.

    When the truck had travelled about a mile, and after learning from the CSs that they had been given weapons, the officers attempted to stop Cunningham's truck, but he failed to yield.  After the truck ran over spike strips the officers had deployed, someone tossed something that looked like a firearm or a cell phone from the car.  Cunningham ultimately pulled over when the truck became disabled.  When the officers approached and commanded the occupants to exit, neither Defendant nor the other two occupants did so.  Defendant was then removed from the rear seat and placed against the hood of Det. Walsh's police car.  When asked for his identification, Defendant gave a false name. After learning this, Defendant was placed in the front seat of the police vehicle.

Defendant was advised of his rights under *Miranda* at the scene and transported to the police station.  The officers also advised Defendant of his rights in connection with his interrogation at the police station, which was recorded on video.

### **Probable Cause for the Arrest**

Defendant contends that probable cause was lacking because the officers had no information about Gordon's involvement prior to the meeting at the hotel, and because Cunningham did all or most of the talking in the hotel room.  He further notes that while a cell phone linked to Defendant texted the photo and address of the intended victim to the CSs, the officers were unaware of whose phone sent the information at the time of the arrest.  But these facts do not dispel the probable cause.  Here it is undisputed that Defendant went with Cunningham to a meeting that had been arranged to discuss the CSs conducting a murder for hire.  He listened to the entire, lengthy discussion, nodding his head throughout.  Knowing that a later meeting was to take place at which payment and firearms were to be provided to the CSs, Defendant again went with Cunningham to the meet, and provided the firearms to one of the CSs, while Cunningham delivered the cash payment.  The bulk of these discussions and interactions were captured by audio or video.  The officers saw something tossed from the truck when they attempted to stop the truck with spike strips.  When the truck became disabled and finally pulled over, Defendant refused the officers' command to exit the vehicle, and then provided a false name.

Based on these facts, the officers had clear probable cause to arrest Defendant. *See Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (Warrantless searches of two

vehicles were supported by probable cause where police had seen one defendant put drugs in trunk of car they searched and had seen another defendant act in ways that suggested he had drugs in his truck); *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1228 (10th Cir. 2008) ("Sufficient evidence that two vehicles are driving in tandem plus evidence that one vehicle contains contraband can provide probable cause sufficient to support arresting the driver of the other vehicle.").

### Motion to Suppress Statements

For the reasons set forth in the Second O&R, the Court also finds no basis for Defendant's motion to suppress his statements. Defendant's first contention, that his statements must be suppressed as the fruit of an unlawful arrest, is rejected based on this Court's finding that there was probable cause for the arrest.

Further, Defendant was orally advised of his *Miranda* rights at the scene, and voluntarily waived those rights. At the police station, Defendant acknowledged that he had previously been advised of his rights and understood those rights, stating, "I know my rights." The officers also read Defendant his rights again from a sheet. Each right was read independently. After each, Defendant was asked if he understood, and he nodded, and thereafter stated that he understood everything. He spoke freely to the officers, and his statements were clear and responsive. Indeed, Defendant initially made false statements to the officers, insisting he knew nothing about Cunningham's actions, and had not even gone up to the hotel room. He thereafter adjusted his statements, admitting only as much as he needed to as the officers disclosed information about their knowledge of the events.

Defendant argues that the statements must be suppressed because he did not expressly waive his rights.  However, as set forth in the Second O&R, an express waiver is not necessary.  *North Carolina v. Butler*, 441 U.S. 369, 375-76 (1979); *United States v. Magallon*, 984 F.3d 1263, 1284-85 (8th Cir. 2021).  Further, as noted in the Second O&R, Defendant advised the officers that he had prior involvement in the criminal justice system, including a prior federal conviction, and there is no suggestion that the officers exerted any coercion.  From all of the circumstances, the Court finds that Defendant knowingly, voluntarily, and intelligently waived his rights under *Miranda*, and voluntarily spoke with the officers.

### Digital Precision Location Information

Defendant's motion to suppress the precision location information related to co-Defendant Cunningham's cellphone is also denied for the reasons set forth in the Second O&R, as Defendant has no standing to contest the warrant.  Moreover, probable cause for the search appears on the face of the affidavit in support of the warrant.

Accordingly,

**IT IS HEREBY ORDERED** that the Second Order and Recommendation of the United States Magistrate Judge [Doc. No. 141] is **SUSTAINED, ADOPTED, AND INCORPORATED** herein.

**IT IS FURTHER ORDERED** that Defendant's Objections to the Report and Recommendation [Doc. No. 151] are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motions to Suppress Evidence [Doc. Nos. 41, 82, 83, and 88] are **DENIED**.

8

**IT IS FURTHER ORDERED** that the government's oral motion for a determination of the admissibility of arguably suppressible evidence [Doc. No. 42] is **DENIED as moot**.

A final pretrial conference has been scheduled for February 1, 2023, at 10:00 a.m.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 9th day of January, 2023.